Welcome. The first case on the call of the docket today, this morning, is Agenda No. 11, No. 128, 316, People of the State of Illinois v. Sean Taylor. Counsel for Appellant, are you prepared to proceed? Good morning. I'm Demetri Goldfuss. I'm from the Office of the State Appellate Defender, and I represent Sean Taylor. May it please the Court, Counsel. Your Honor, there are two questions presented on appeal. The first is whether the attempt statute allows the joint application of the attempt murder enhancements for the use of the firearm during the offense and the victim's status as a peace officer. This Court should conclude that that is not allowed, given the plain language of the statute and, if need be, the rule of lenity. Therefore, Mr. Taylor is asking that you vacate the 20-year firearm enhancement from the sentence. The second question presented is whether Mr. Taylor is entitled to a second state-funded insanity expert after his initial insanity expert gave an uncertain opinion that he was sane at the time of the offense, but then recommended to the defense that he seek a second opinion. Was it a recommendation that you seek a second opinion, or was it more of, you know, you might want to? It didn't seem that definitive. Sure. It was a recommendation, and our argument is based on two things. Number one, if you look at the handwritten note that says that, from Dr. Wibberspoon, you may wish to seek a second opinion. But then Dr. Wibberspoon and defense counsel had a conversation after that in person, and defense counsel told the Court that Dr. Wibberspoon conveyed to him that the insanity question is a very, very close call and that it was important that a second opinion be sought. So, based on that personal conversation that is in the record conveyed by the defense counsel to the Court, that is a recommendation. But Dr. Wibberspoon never actually testified before the Court as to whether he had a second opinion or it was questionable. He never actually said any of those things on the record in front of the Court, correct? Correct. And I think it's important to remember that Dr. Wibberspoon is not the Court's expert. Dr. Wibberspoon is the defense expert. He's there to give advice to the defense. So it makes no difference whether he's in person telling that to the Court or not. The fact that he conveyed it to defense counsel is all that matters. It makes no difference whether it's in a typed report, in a handwritten note, or orally. All that matters is he conveyed it to defense counsel, and defense counsel passed that information on to the Court. Was defense counsel precluded from bringing the doctor in and having him testify in front of the Court? He wasn't precluded from doing that. We know that defense counsel brought that up when the Court seemingly was concerned that all these things that counsel was telling him and these things were in a handwritten note weren't in a typed report. But at the end of the day, the record does not show why Dr. Wibberspoon did not make another addendum or why Dr. Wibberspoon did not come into court. Ultimately, the Court had everything it needed to show that a second expert was required. Counsel, I don't think you answered the question directly, and I would like to know, is there anything that precluded counsel from bringing Dr. Wibberspoon in to testify or getting another report that was clear so that we're not guessing as to whether it was a suggestion or whether it was an actual recommendation? No, there's nothing precluding that. But again, we have a record that shows an expert saying this case is borderline. You may want to get a second opinion. We have an officer of the Court telling the Court that Dr. Wibberspoon conveyed to me that getting a second opinion is important. And I know that the AG's office has floated around this idea that, well, perhaps this was just Dr. Wibberspoon trying to appease defense counsel. We know that's not the case, because when you look at the initial evaluation, Dr. Wibberspoon is very definitive that there's no psychosis in this case and that Mr. Taylor cannot meet the threshold for insanity. But then he reviews hospital records from 2007 involuntary hospitalization, and that causes him to walk back his opinion in both the addendum and in communications to defense counsel. He sees in that 2007 record that Mr. Taylor was hospitalized for what Dr. Wibberspoon opined was a brief psychotic episode. Then in the addendum, Dr. Wibberspoon goes on to say that Mr. Taylor's functioning at the time of this psychotic episode in involuntary hospitalization was akin to his functioning in our case. So Dr. Wibberspoon is opening the door to the possibility that there may have been psychosis here. And then he ultimately changes his opinion from saying definitively sane to borderline case, very close call. So we have a particular fact in the record, newfound knowledge that Mr. Taylor has a history of psychosis, that causes the doctor to change his opinion. Now, our position... If it causes him to change his opinion, you're talking about the conversation with defense counsel. I'm talking about the entire... The note and the conversation with defense counsel. Correct. That is where his change of opinion is reflected. Correct. And ultimately, Dr. Wibberspoon would not have said those things if he was certain to his opinion. And if he's uncertain in his opinion, the insanity defense is still viable. Insanity is still seriously in question. And under the decisions in Ake and McWilliams, when insanity is seriously in question, that entitles the defendant to an expert in insanity. And that expert must be capable of performing four functions. The expert must not only be able to examine the defendant and evaluate the viability of the insanity defense, but the expert must also be able to assist the defense in the preparation and presentation of the insanity defense. Given the nature of Dr. Wibberspoon's uncertain opinion that Mr. Taylor was saying, he cannot perform all those functions. He cannot assist the defense in preparing and presenting an insanity defense at trial. Are you aware of any cases that deal with this issue of the uncertain opinion that's based on something outside the record? I'm not, and I think everything that we need to... Everything that this Court needs to reshoot... Maybe I should rephrase it. Not coming directly from the examining doctor. No, I'm not. But again, the defense counsel is an officer of the Court. He has an obligation to be truthful with the Court, and I don't think we should be presuming that he is not telling the truth. I know that in Batson cases, this Court has held that the attorneys in a Batson challenge do not need to be sworn in. They don't have to testify under oath. We presume they are credible, and we take them at their word. And we should do the same with defense counsel in this case when he's telling the Court that Dr. Wibberspoon conveyed a second opinion is important. It's a very, very close call. And it's also important to remember that we're dealing with a field of psychology. The Court in Aik recognized that experts in this field frequently disagree with one another, especially when it comes to insanity. Counsel, I'm having some difficulty. Dr. Wibberspoon, in the past, had always included in his written report a recommendation for a second opinion if he thought that was warranted. And in this case, he didn't. So, I mean, what are we to assume from that? Your Honor, I don't believe your statement is accurate, given what the trial judge said. The trial judge conveyed that Dr. Wibberspoon would write in the report that he would recommend another expert to examine or talk to a certain individual if that's something he could not do himself, if that was not his area of expertise. Now, I don't agree with you that how you said it is accurate. But my understanding is that the trial judge recognized that in the past, when Dr. Wibberspoon thought that a second opinion was warranted, he would include that in his report. And he didn't do that here. So what are we to conclude from that? Absolutely nothing. Okay. We have a situation where you see a change of opinion from the evaluation to the addendum. You had a handwritten note that no one disputes is from Dr. Wibberspoon, and you have an officer of the court conveying a conversation he had with Dr. Wibberspoon. None of that can be ignored. And in McWilliams' decision, the court made very clear that one of the functions of an expert is to talk to defense counsel and explain what is in the report, explain the conclusions. That was essentially the holding in McWilliams. So given that constitutional function that the expert was playing in this case, we can't just ignore the substance of that conversation. Counsel, what was the change in the addendum? The change in the addendum was going from a definitive conclusion that there's not psychosis to suggesting that there may be psychosis, given that Mr. Taylor's functioning in this case was akin to his functioning during a psychotic episode in 2007 that required hospitalization. And then the change in a definitive opinion that Mr. Taylor was saying to, it's a borderline case. And that's from the note? That's from the note. So in the addendum, what was the specific language that Dr. Wibberspoon used that was different than in the original report? The only thing that was different was him walking back. What did he say? Look. Referring to the hospitalization in 2007, the doctor said, quote, likely that he suffered a brief psychotic episode. And then on the next page he says, Mr. Taylor's functioning then was akin to that described subsequent to his arrest and standard, that is, he stated he was overwhelmed with fear of being murdered, at that time fled the police and later shot at them. This did not apparently persist for more than a few hours. Ultimately, in the addendum, he does not change his opinion that Mr. Taylor was saying, but then when he writes the handwritten note and talks to the defense counsel, he does. He sets his borderline. He says it's a very close call. One important point that I want to make is that if a prosecutor or a private defense attorney were in a situation where they have an expert who expresses an uncertain but an unfavorable opinion that the defendant is saying and then either suggests or recommends to that prosecutor, that private attorney, that they get a second opinion, we would all expect that prosecutor and that private defense counsel to get a second opinion. And that in no way can be considered expert shopping or a fishing expedition, because doing that in those circumstances is the reasonable and diligent thing to do. And if that attorney were a public defender representing a poor person, it would be just as reasonable and diligent. So if we tell Mr. Taylor you're not entitled to a second expert in circumstances where we would expect a prosecutor and private defense counsel to get one, what we're really telling Mr. Taylor is you don't get a second expert because you're poor. And that's why the federal standard for the appointment of defense experts, which I mentioned in my reply brief, that's why it is what it is. That's why it asks, in part, what would a reasonable private defense attorney do with financial means? But, of course, your position assumes that we would take the position that a private attorney or prosecutor would be required or should be getting a second opinion, right? No. He's entitled to a second expert as a matter of fairness, as a matter of reasonableness, as a matter of common sense, and because of the Constitution of Illinois and the United States require. My question is if you're not of the opinion that it's appropriate to seek a second opinion, how is it coming down to because he's poor, he's not getting a second opinion? I'm not sure I understand your question. I am of the opinion that he's entitled to a second expert. I realize that, but we won't worry about it. Please continue, counsel. So, ultimately, appointing a second expert here is the only reasonable and fair conclusion. We have the constitutional standard that says if insanity is seriously in question, which it is because Dr. Witherspoon is uncertain in his opinion, the defendant is entitled to an expert who can perform all those constitutional functions. Dr. Witherspoon cannot assist the defense in preparing and presenting an insanity defense. So if we're of the opinion that Dr. Witherspoon was not uncertain, do you lose? I think the answer would be yes. If he's not uncertain, then insanity would no longer be seriously in question and we would lose. Correct. Why didn't the doctor write all of this in his opinion? I mean, the issue here is his opinion says, this is my opinion, and then he says this privately. Doesn't that call into question the doctor? Why isn't all of this in his opinion? What is your explanation for that? Your Honor, the record does not reveal why. I have no explanation why the doctor would do that. Ultimately, the doctor writes a handwritten note on his letterhead, the same letterhead used for a report to convey that opinion to defense counsel, the person who he is responsible to give his opinion to. And that was provided to the court, and defense counsel conveyed the substance of his conversation to the court. And there's no legal reason to ignore that. Counsel, can I direct your attention to the interpretation of the statute in regard to the enhancement issue? Absolutely. Based on the plain language of the statute, you have one conjunction that joins the exceptions together that are in subsection C1A through E. Because there's only one conjunction, that means that those exceptions are either wholly conjunctive or wholly disjunctive. Now, we know that a wholly conjunctive reading presents some problems, and the state in its brief acknowledges those problems. Subsection E cannot be applied at the same time as subsections A through D. Also, subsections B, C, and D cannot be applied together at the same time because that would not only be a double enhancement, that would be an absurd double enhancement. And we shouldn't be construing statutes for absurd results. Now, the state's solution to that problem is a selectively conjunctive reading. The state wants the court to interpret some of those exceptions conjunctively and then interpret others disjunctively. That is contrary to the plain language of the statute. Again, there's one conjunction. It's either wholly disjunctive or wholly conjunctive. The solution to that problem is a wholly disjunctive reading. This court can accomplish that by interpreting the word and to mean or. That is within the rules of statutory construction. This court has done this before. People v. Toussignant is an example. And that avoids the problem that a wholly conjunctive reading creates. Counsel, what's the base sentence for attempt murder? Six to 30, class X. Six to 30. And the enhancement is what? The status? The victim's status would be 20 to 80. So that's the enhancement? That is a sentencing enhancement pursuant to the Alleen decision. The Supreme Court would view that as a new aggravated offense containing a new element. So if you added 20 years, that would be a double enhancement? Yes. Yes, that is our position. Yes. It's important to know that, you know, if a legislator wanted to create a separate aggravated offense for attempt murder on the basis of both the victim's status and the use of a firearm, it would have plainly done so in this statute by nesting those two elements together in a separate exception. We've seen the legislature do that for other offenses such as aggravated assault and also predatory criminal sexual assault, where they've nested those two elements together, victim status and use of a firearm. The legislature chose not to do that here. So the statute does not plainly state an offense for, essentially, aggravated attempt murder where the victim is a peace officer and a firearm is used. Finally, if this court is of the opinion that the statute is ambiguous after exhausting all rules of statutory construction, then the rule of lenity would apply. Of course, when the rule of lenity applies, this court construes the statute in the light most favorable to the defendant. So Mr. Taylor would obviously win in that case. So we're asking that this court reverse Mr. Taylor's conviction because he was denied second expert. If this court concludes that that relief is not warranted, then Mr. Taylor requests that you vacate the 20-year firearm enhancement. And if there are no further questions, I thank Your Honors for your time. Thank you. Thank you. Good morning, Your Honor. My name is Nick Muller from the Attorney General's Office on behalf of the State. May it please the Court, Counsel. I think an important first step in analyzing the expert claim is to redirect the Court to what the actual question before this Court is. The only claim raised by defendant is a claim under the U.S. Constitution as defined by Ake and then by McWilliams. He has not raised an Illinois constitutional claim, and he has not raised any statutory claims. That means that the standard this Court has to analyze that claim remains solely what the United States Supreme Court has said it is, and that's the standard put forth in Ake, which says that defendant is entitled to access to a competent psychiatrist who will conduct appropriate examination and assist in evaluation, preparation, and presentation of the defense when sanity is a significant factor at trial. The new test that defendant is proposing is not a constitutional test, but comes from a Federal statute, which has been interpreted, that statute specifically has been interpreted as means to correct for the inequality in wealth between an indigent defendant and a defendant with the means to hire experts. However, that's not the constitutional standard, because Ake specifically said that the State's not required to purchase for an indigent defendant all the assistance that his wealthier counterpart might buy. So the fact that private counsel, if they had money, could go forth and buy more experts has no bearing on the analysis of Ake. Ake asks only was sanity a significant factor and was defendant given access to an expert to assist, which happened in this case. So what's before the Court is merely a fact question. What did Dr. Witherspoon say? We have two official reports, the initial report and his addendum, both official medical evaluations that were intended to go before a court, and neither of these documents express any doubt. Nowhere does Dr. Witherspoon say, I'm unsure in my opinion. He gives a firm opinion to a reasonable degree of medical certainty. His professional opinion is that the defendant could not meet the requirements for an insanity defense. That was his official position. That's what he told the Court. Any doubt that has been injected comes from the note, which says, defendant is a borderline case. I do not think he meets the threshold of NGRI. However, if his parents can afford it, you may wish to seek a second opinion. If so, I can give you the names of a couple other good psychologists who can do this work. An informal note to defense counsel saying, hey, I don't think he was insane, but if you've got the money for it, I can give you some names. Any suggestion that there was some substantive conversation between defense counsel and Dr. Witherspoon that added more to that happened outside of the record. It should not be considered by this Court. But if we are to look at his conversations with Dr. Witherspoon, it's telling that the Court said, look, I don't think Dr. Witherspoon gave this recommendation. Counsel then said, well, what if I go back to the doctor and get a firmer recommendation? Would you listen then? And the Court said, of course I would listen. So counsel presumably went back and had that conversation, but never came back to the Court. So if anything is to be taken from counsel's conversations outside the record, it's that he said he was going to seek the firmer recommendation, but was never able to come back to Court to do so. So the conclusion left by the record is that Dr. Witherspoon did not have doubt. He did not doubt his opinion. He knew his opinion might be different from what other experts would say, but that's not the same thing as not having confidence in your opinion. That's acknowledging sometimes experts disagree. And under AIC, a disagreement of experts is not enough to entitle you to a second expert. So unless the Court has any questions on that aspect, I'd like to turn to the statutory interpretation. This question comes down to plain language. Defendant is not giving this Court a plain language reading because they are trying to change an and to an or. And most times, plain language says and. It means and, unless you have a compelling reason for that and to mean something else. And there is no compelling reason between subsection C1A, which deals with protected victims, and the firearm enhancements, which focus purely on whether or not a weapon was possessed, used, or caused bodily harm. There's no reason that those cannot be combined together. It's telling that defendant's reply brief begins with a discussion of why legislative intent is not important in our discussion, and why they did not come up for any reasons why the legislature would intend for these two sections not to apply. And that's because there are no good reasons. And this Court, in almost every statutory interpretation case they have, starts with the two sentences that the State cited that defendant seems to object to. And that's the primary goal of statutory interpretation, is to discover and give effect to what the legislature intended. And the best method of doing that is to look to the plain language. And if the plain language gives you the answer, you don't need to go any further. We don't need to look to other parts of the statute to try and cobble meaning together. If this Court is not having to make a guess at what the legislature meant, there's no reason to go to the rule of lenity. The statute says and. And then when you look at the statute itself, the form together makes clear that these combine together, because this is not just a list of exceptions. The list reads almost like an instruction list for a sentencing court to follow, because we start with subsection C1 that says the sentencing range for attempted murder is Class X, which when you look to the Class X sentencing statute means 6 to 30 years. It then says with subsection C1A that if the attempted, I'm sorry, an attempt murder, attempt to commit first-degree murder when the victim is one of these protected classes, meaning firefighters, police officers, and other similar first-responder-type positions, it is a Class X felony for which the sentence shall be a term of imprisonment of not less than 20 and not more than 80 years. So that second step is, but it, so subsection C1 has, this is what the sentencing range is. However, if we have a protected victim, that sentencing range shuffles forward. It then moves on to the firearm enhancements, and I'll look to C1C because that's what is at issue here. And it continues that an attempt to commit first-degree murder during which the person personally discharged a firearm is a Class X felony for which 20 years shall be added to the term of imprisonment imposed by the court. So subsection C1A said this is the range for the term, and when we get to the firearm enhancements, they say, and this is what you shall add on to the end of that term set by the court. And so now, in order to get to defendant's reading, it's not just changing an and to an or. We're reading a shall out of the statute. And finally, when it gets to subsection E, it gives defendant a chance to mitigate his sentence by proving that he acted under undue provocation. So when you read it as a whole, it's not just a list to be viewed as other lists where it's a bunch of things put together. It's almost an instructional step list for the court to go down that first sets a sentencing range, then adds any applicable enhancements based on the facts, and finally gives a defendant a chance to mitigate the sentence if the facts can be proven that way. Beyond the plain language, I'd like to turn to what double enhancement means. Double enhancement, put simply, means that this court will not presume that the legislature did not intend to enhance a sentence twice based on the same single fact. Whether that's two separate enhancements that both rely on the same fact, or a fact establishing an element of a crime, and then a secondary enhancement on top of that. There is no double enhancement between subsection C1A or any of the firearm enhancements because there's no shared fact. The status of a victim. The first one deals with the fact that we have a police officer, and then the other enhancement deals with the fact that a weapon was used, a gun was used. Yes, Your Honor. The two facts that operate to start the enhancement are not the same, and therefore there just is no double enhancement. And so there's no compelling reason between those to change that and to an or, like you have with subsections B through D, which do have a double enhancement problem, because they're nesting in the sense that both, all three ultimately rely on the fact that the individual had a gun and he possessed a gun. And if you look at the way the sentences add up, it's clear that there's a five, sorry, I believe there's a five year added on for each additional fact from the 15 year enhancement to 25 to life. And so looking at the overall structure and the wording of the statute, it's clear to see what the legislature intended. They wanted to protect police officers and EMTs and they're serving the public and need to be protected, so they had a higher sentencing range in order to deter crimes against them. Then they wanted to deter crimes that even have just the possession of a firearm, because the legislature knows that the possession of a firearm alone not only makes the crime more dangerous to the direct victim, but makes the crime more dangerous to the victims in dangerous positions. There's no reason that now that the legislature has established these two separate goals to believe without much clearer language in the statute that they intended for just one of those goals to be picked at any one time when the facts were present to support both. There's no reason to think that a firefighter should not be less deterred or a person targeting a firefighter should be less deterred from using a gun in a way that the firearm enhancements become less necessary. There's no reason to think, as defendant first put forth, that subsection C1A encompasses this firearm element in it, because attempted murder doesn't require a gun. And so there's just been no good reason to believe that the legislature did intend differently from what the statute says and the statute says and. Moving on to defendants suggest Apprendi and Allain apply to this case, and they simply are not called upon by these facts. Apprendi and Allain dealt with what fact or what elements the State must prove beyond a reasonable doubt, what elements must be found by a jury. They did not deal with sentencing in the sense of what enhancements are permissible. They don't deal with statutory interpretation of Illinois statutes. What defendant is doing is taking a rhetorical device used by the court in that case to suggest that separate crimes exist only to say you have to prove all of the elements within them and trying to use that language out of context here. It does not apply. Defendant has not suggested any of the elements of the crime or the sentencing statute were not proven beyond a reasonable doubt. He hasn't suggested that they were taken out of the hands of the jury. So those Supreme Court cases just are completely inapposite to here. Finally, moving beyond the plain language, the reading defendant asks this court to take leads to absurd results. It allows for an individual who fires at and attempts to kill a civilian with a firearm to have a lower minimum sentence than an individual who commits the same crime against an EMT who the legislature expressly tried to protect, that being if these firearm enhancements do not apply, if an individual tries to kill one of the protected classes with a firearm, their minimum remains 20 years. However, if that fireman happened to be off-duty, wasn't a fireman, that minimum now bumps up to the 26 in this case being C1C. So that would be the six-year minimum plus the 15 mandatory enhancement. That's an absurd reading. The legislature wanted to protect these individuals more. And so why would they craft a statute where they actually get protected less if the individual is using a gun? It is not the way the statute was intended to be read. It is not governed by the plain language. And so the State would ask, unless there are any further questions, the State would ask that the judgment of the appellate court be affirmed. Thank you. With regard to the expert issue, we are not asking that Mr. Taylor receive whatever a prosecutor could receive or whatever a private defense attorney receives. We are asking that a public defender representing a poor person be allowed to exercise diligence when the circumstances of the case objectively call for it. And the 8th standard applies? Yes, that is our claim. And what is the 8th standard? The opposing counsel said you're not making your argument, your claim, based on the 8th standard. The 8th standard provides that when a defendant's sanity is seriously in question or when it's in the interest of a defense in preparing and presenting that defense for trial. Our argument is that given Dr. Wibberspoon's uncertain opinion and recommendation, insanity was still seriously in question and it was still likely to be a significant factor at trial. Therefore, he's entitled to an expert who can perform his constitutional functions. Dr. Wibberspoon can't perform all those constitutional functions given his uncertain opinion that Mr. Taylor was saying. Therefore, a second expert is required. Counsel, you say uncertainty, but the opposing counsel said these are firm opinions. A reasonable degree of medical certainty. Where's the uncertainty? Of course, the opposing counsel says that. The uncertainty is, again, you have the doctor walking back his opinion from his definitive opinion in the evaluation to the addendum. And then in a handwritten note where he says, borderline case, you may want to get a second opinion. And then to talking to defense counsel in person saying, very, very close call. Getting a second opinion is important. Now, that might not be official because it's not in a handwritten, a hand-typed evaluation, but it's still part of a record and it's still Dr. Wibberspoon conveying his opinion to the defense, which the defense shared with the court. The court had that information. There's no reason to say that's not credible. The court simply decided to essentially ignore it because it wasn't in an evaluation. What about the fact that it's raised by opposing counsel that there was this conversation between the court and counsel and the court said, sure, I would consider it if you go back and get something more firm. Do you agree that never happened? We don't know whether defense counsel went back and talked to Dr. Wibberspoon.  No. We would be speculating if we concluded that defense counsel did go to Dr. Wibberspoon and then Dr. Wibberspoon, whatever Dr. Wibberspoon came back with. We don't know. But ultimately, it doesn't matter. Doesn't that just, I mean, this is direct appeal. Just because we don't know what happened, it's outside the record. Is this a claim that was brought maybe in a collateral proceeding? No. Everything that the trial court needed and everything that this court needs to conclude that Mr. Taylor's entitled should get a second expert is in the record. Counsel, isn't the purpose of the language to a reasonable degree of medical certainty intended to add certainty to the doctor's opinion? I mean, every time a doctor gives an opinion without that language, it's not really a certain opinion. That language was present in this case. So why isn't it certainty? Because the doctor wrote the note and he had a conversation with defense counsel expressing uncertainty. So using that analysis, when a doctor writes an opinion or gives testimony and attests that it's to a reasonable degree of medical certainty, that really doesn't mean it's certain. Correct. Let's be real clear what this note says. He says, defendant is a borderline case. But he says, I do not think he meets the threshold of insanity. Why is there any question here? He is saying, I do not think he meets the threshold of insanity. Why are you suggesting there's somehow this undermines the opinion that he's given to the degree of medical certainty? Because he referred to it as a borderline case and told defense counsel the issue of insanity is a very, very close call. And he was certain he would never have said that. And we know that Dr. Witherspoon isn't just... No. His report says degree of medical certainty. Here he says, I do not think he meets the threshold of insanity, period. I think that's the end. He's not saying, I have a question. I am unsure. I am uncertain. He's saying, I do not think he meets the threshold. He's choosing to fall on one side or the other. But when he uses the word borderline, borderline signifies uncertainty. Calling something a very, very close call and even suggesting going out and getting a second opinion signifies that he's not certain. And that's an acknowledgment that another expert in his field could very well disagree with him. And that means the insanity defense is still viable and that insanity is still seriously in question. With respect to the sentencing issue, the state has argued that there's no good reason to not apply the firearm enhancements on top of A. There's actually no good reason to apply for what the state is arguing. A presents a very broad sentencing range of 20 to 80 years. That's 60 years of imprisonment that the court has discretion to pick a sentence for. That sentencing range was designed to encompass all scenarios where someone attempts to murder a peace officer, where the defendant attempts to do that with a knife or with a firearm. The sentencing judge has discretion to say, okay, this type of instrumentality was used. I can therefore go on a higher end of the range. The reason why the minimum is lower is for that very reason, because subsection A also takes into account circumstances where a defendant attempts to kill a police officer without a firearm. It allows a judge to fashion a sentence that's more severe when a firearm is used when not. It's also noteworthy that in circumstances where a defendant attempts to kill someone either by possessing a gun or discharging a gun, the sentencing range for when the victim is a peace officer is going to be higher than when the victim is an ordinary citizen. When the defendant attempts to kill someone and causes great bodily harm, the maximum sentence, whether the victim is a peace officer or an ordinary citizen, is essentially the same. So the legislature has shown that when the victim has caused great bodily harm, there's going to be a very severe sentence, regardless of who that victim is. Now, if a prosecutor is unsatisfied with a maximum under A being 80 years when the victim has suffered great bodily harm, that prosecutor can charge under subsection D and try to get a natural life sentence. Certainly the legislature knew that. Subsection A encompasses the joint purposes of preventing people from using firearms in offenses and also protecting police officers. It takes care of both of those purposes. Now, if we were to conclude that the statute plainly authorizes subsection A to be used as a maximum under A, to be used with firearm enhancements, we would also have to conclude that the statute plainly authorizes a double enhancement. There is no language that differentiates between applying A for firearm enhancements and applying the firearm enhancements with each other. Now, our position is that that would be an absurd result. We know that the legislature can't authorize a double enhancement, but our position is that would be absurd. And the solution to that problem, that absurdity, is a wholly disjunctive reading. Now, the state says that we're trying to change the language. We're asking that the court interpret and to mean or. That falls within the rules of statutory construction. What the state wants to do is have the word and inserted between A and B, and then write the word or between B, C, D, and E. That's rewriting the statute. That's something this court's not had the authority to do. That's the job for the legislature. Your Honors, I see my time is up. Again, we would ask that you reverse, and if not, vacate firearm enhancement. And again, if there's no further questions, I thank the court for its time. Thank you very much, counsel. This case, agenda number 128, 316, will be taken under advisement. Thank you both very much.